Dear Mr. Kearns:
Our office is in receipt of an opinion request from you concerning Slidell Memorial Hospital Foundation. Your letter provides that Slidell Memorial Hospital Foundation (Foundation) is a not-for-profit corporation organized under Louisiana's Non-Profit law, and has achieved tax exempt status under Section 501(c)(3) of the Internal Revenue Code. The sole member of the Foundation is St. Tammany Parish Hospital Service District No. 2 (District). The organizational costs and expenses for the Foundation's first year of operation are being funded by the District.
Your request asks our office to address the following questions:
 (1) Is Slidell Memorial Hospital Foundation characterized as a public or quasi-public corporation?
 If so,
 (2) Is the Foundation subject to open meetings laws, public records laws and inspection by the Legislative Auditor? *Page 2 
 (3) Does the Foundation benefit from the advantages of the "Enhanced Ability to Compete" legislation including executive sessions to discuss marketing strategies and strategic planning?
 (4) Can members of the Board of Commissioners of the District serve as trustees of the Foundation?
 (5) Can the District appoint Foundation trustees?
 (6) Can the District retain the right to approve amendments to Foundation bylaws and articles of incorporation?
 (7) Can the District retain the right to revoke actions or expenditures of the Foundation?
Each issue will be addressed in turn.
Slidell Memorial Hospital Foundation as a public or quasi-publiccorporation
As our office stated in Atty. Gen. Op. No. 07-0046, La.Const. Art. VII, § 14 prohibits a Hospital Service District from creating and owning a private business corporation. Therefore, the Foundation must necessarily be at least a quasi-public nonprofit corporation. A copy of this opinion is attached for your review.
Our office opined on the difference between public and quasi-public corporations in Atty. Gen. Op. No. 96-350, where we stated:
 A corporation is a "public corporation," as distinguished from a "private corporation," when it is created for a public purpose only, connected with the administration of government, and when its whole interests and franchises are the exclusive property and domain of the government itself. National Bank of Commerce in New Orleans v. Board of Supervisors of Louisiana State University and Agricultural Mechanical College, 206 La. 913, 20 So.2d 264 (1944).
 [. . .]
 A "quasi-public corporation" is one affected with a public interest; (i.e., a class of private corporations) which, on account of special franchises conferred on them, owe a duty to the public which they may be compelled to perform. State, ex rel. Coco v. Riverside Irrigation, Co., Ltd., 142 La. 10, 76 So. 216
(1917). Quasi-public bodies are those bodies which are not strictly private bodies. Attorney General Opinion No. 78-1183. This office has consistently held that quasi-public bodies (e.g., corporations) constitute those which are: (i) not strictly private bodies; (ii) primarily funded by public funds, and (iii) organized to serve a public purpose or provide a public service. Attorney General Opinion Nos. 93-595, 92-736, 90-271, 84-583, 78-1183, 77-1726 and 75-124. *Page 3 
In the instant case of Slidell Memorial Hospital Foundation, it is the opinion of this office that it would qualify as a quasi-public corporation. From the information provided, they do not appear to have been created for a public purpose only, connected with the administration of government, and its whole interests and franchises do not appear to be the exclusive property and domain of the government itself. Your letter indicates that the Foundation was created by the District. Your letter also provides that its purposes include the support of Slidell Memorial Hospital as a public, non-profit, tertiary care community hospital; the establishment and operation of community health programs; and the receipt and administration of funds to support the mission of Slidell Memorial Hospital and its community health programs. The sole member of the Foundation is the District, who has funded the Foundation's first year of operation costs. The Foundation is not a strictly private body, and it is affected with a public interest, organized to serve or provide a public service. For the reasons stated above, the Foundation should be characterized as a quasi-public body.
Please note, as our office has previously stated in Atty. Gen. Op. Nos. 07-0046 and 93-236, that if the Foundation is a creature of the hospital service district and acts as the agent of the district in exercising district powers granted by La.R.S. 46:1051 et seq., then "the non-profit corporation can have no greater powers and authority, nor any less responsibility for compliance with state law, than has the District itself. The District cannot do indirectly or through an intermediary other than it can do or must do directly."
Open Meetings Laws, Public Records Laws, Inspection by the LegislativeAuditor
For the purposes of this question, it is relevant to discuss the authority of the District to create the Foundation. The St. Tammany Hospital Service District No. 2 is created pursuant to Act No. 180 of 1984. Section 3 of this Act addresses the powers, duties and responsibilities of the Board of Commissioners of the District, and provides in Subsection (15) that the Board of Commissioners for the District may "establish, maintain, and carry on its activities through one or more profit or nonprofit corporations for the benefit of the district." Pursuant to Act No. 180 of 1984, the District has the authority to create the Foundation.
Louisiana law regulating nonprofit corporations, found in La.R.S.12:201 et seq., provides certain limitations on nonprofit corporations of particular importance to whether the Foundation must comply with Louisiana Open Meetings Laws, La.R.S. 42:4.1 et seq., and the Public Records Act, La.R.S. 44:1 et seq. Louisiana Revised Statute 12:202.1(D) states:
 The prohibition of this Section will have no application to local political subdivisions of the state with a population in excess of one hundred fifty thousand, nor to their respective boards, commissions and departments. Any provision of this Section or other provision of law notwithstanding, a quasi-public nonprofit corporation may be created by any such political subdivision of the state under the general nonprofit corporation law of *Page 4 
Louisiana with all powers pertaining thereto, including the right to issue negotiable revenue bonds not to exceed fifteen million dollars with interest thereon not to exceed eight percent per annum which shall be exempted from taxation and which bonds shall constitute negotiable instruments within the meaning of the negotiable instruments law of the state of Louisiana; all properties and assets of whatever nature and description owned or operated by said nonprofit corporation shall be exempted from state and local taxation, including ad valorem taxation; and the governing authority of such quasi-public nonprofit corporation shall be subject to the requirements and provisions of the public contract law, the public meeting law, and the public records law of the state of Louisiana.
[Emphasis added].
Clearly, the above statute provides that the governing authority of the Foundation, which is a quasi-public nonprofit corporation created by a political subdivision of the State, is subject to Louisiana's Open Meetings Laws and Public Records Act.
Public or quasi-public agencies or bodies are subject to audit by the Legislative Auditor. La.R.S. 24:513 sets forth the powers and duties of the legislative auditor, and provides in Subsection (A)(1)(a) that the legislative auditor has the authority to compile financial statements and to examine, audit or review the books and accounts of certain specified entities, including, "all public boards, commissions, agencies, departments, political subdivisions of the state, public officials and employees . . . and all other public or quasi-public agencies or bodies." Quasi-public agencies or bodies are defined by La.R.S. 24:513(A)(1)(b) to include:
 (i) An organization, either not-for-profit or for profit, created by the state of Louisiana or any political subdivision or agency thereof, any special district or authority, or unit of local government to perform a public purpose.
 (ii) An organization, either not-for-profit or for profit, that is a component unit of a governmental reporting entity, as defined under generally accepted accounting principles.
 (iii) An organization, either not-for-profit or for profit, created to perform a public purpose and having one or more of the following characteristics:
 (aa) The governing body is elected by the general public.
 (bb) A majority of the governing body is appointed by or authorized to be appointed by a governmental entity or individual governmental official as a part of his official duties.
 (cc) The entity is the recipient of the proceeds of an ad valorem tax or general sales tax levied specifically for its operations.
 (dd) The entity is able to directly issue debt, the interest on which is exempt from federal taxation.
 (ee) The entity can be dissolved unilaterally by a governmental entity and its net assets assumed without compensation by that governmental entity. *Page 5 
 (iv) Any not-for-profit organization that receives and/or expends in excess of twenty-five thousand dollars in local and/or state assistance in any fiscal year. Assistance shall include grants, loans, transfers of property, awards, and direct appropriations of state and/or local public funds. Assistance shall not include guarantees, membership dues, vendor contracts for goods and services related to administrative support for a local or state assistance program, assistance to private or parochial schools, assistance to private colleges and universities, or benefits to individuals.
 (v) Any organization, either not-for-profit or for profit, which is subject to the open meetings law and derives a portion of its income from payments received from any public agency or body.
Pursuant to the definition of a quasi-public agency provided by La.R.S. 24:513(A)(1)(b) and the authority of the Legislative Auditor described in La.R.S. 24:513(A)(1)(a), the Foundation will be subject to inspection by the Legislative Auditor. See also Atty. Gen. Op. No. 07-0046.
The "Enhanced Ability to Compete" Legislation
The "Enhanced Ability to Compete" legislation can be found at La.R.S.46:1071 et seq. Included in this legislation is a special provision allowing for an exception to the Open Meetings Laws for the discussion and development of marketing strategies and strategic plans. La.R.S.46:1073 provides:
 A. In addition to powers and duties otherwise provided and notwithstanding any law to the contrary, a hospital service district may develop marketing strategies for its existing hospital health services or any hospital health service to be provided in the future and may develop strategic plans for the development of any future hospital health service or facility.
 B. Notwithstanding the provisions of R.S. 42:4.1 et seq. or any other law to the contrary, a hospital service district commission may hold an executive session for the discussion and development of marketing strategies and strategic plans.
 C. Notwithstanding the provisions of R.S. 44:1 et seq. or any other law to the contrary, any marketing strategy and strategic plan of a hospital service district commission and the facility owned or operated by the district shall not be public record and shall be confidential but shall be subject to court subpoena.
It is the opinion of this office that the Foundation benefits from the "Enhanced Ability to Compete" legislation. While a quasi-public or public nonprofit corporation such as the Foundation is subject to the Open Meetings Laws and Louisiana's Public Records *Page 6 
Act, the corporation is also afforded the exemptions contained in these statutes. Consistent with previous Attorney General Opinions 96-350 and 07-0046, the Foundation is authorized to meet in executive session to discuss marketing strategies and strategic planning as provided by La.R.S. 46:1073.
Remaining Questions Concerning Trustees, Right to Approve Amendments toBylaws and Articles of Incorporation and Right to Revoke Expenditures
Your remaining questions require reference to the Articles of Incorporation of Slidell Memorial Hospital Foundation (Articles) and the Bylaws of Slidell Memorial Hospital Foundation (Bylaws). As an initial matter, as previously noted in this opinion, the sole member of the Foundation is the District. This is confirmed by Article II of the Articles:
 There shall be but one class of membership. The sole Member shall be St. Tammany Parish Hospital Service District No. 2, doing business as Slidell Memorial Hospital. The sole Member shall appear by and through its Board of Commissioners . . .
and by Article 1, Section 1.1 of the Bylaws:
 The sole member of Slidell Memorial Hospital Foundation shall be the St. Tammany Parish Hospital Service District No. 2 doing business as Slidell Memorial Hospital acting by and through its Board of Commissioners.
With regard to your question of whether members of the Board of Commissioners of the District may serve as Trustees of the Foundation, the issue of membership for the Board of Trustees is addressed by Article V of the Articles, entitled "Board of Trustees," which provides, in pertinent part:
 The corporation shall have a governing board known as the "Board of Trustees" in whom all voting rights of directors shall be exclusively vested. The Member shall appoint the Trustees . . .
 The number of Trustees (excluding the CEO Trustee) shall be not less than three (3) nor more than twenty-one (21). There shall be an odd number of Trustees (excluding the CEO Trustee) . . .
 [. . .]
 With the exception of the Hospital Trustee and the CEO Trustee, the Member may establish objective and subjective criteria for (a) qualification as a Trustee, (b) continuation as a Trustee, (c) removal of a Trustee . . .
 [. . .] *Page 7 
 Not more than two members of the Slidell Memorial Hospital Board of Commissioners shall serve as Trustees.
As Article V of the Articles points out, the Member, (St. Tammany Parish Hospital Service District No. 2, acting by and through its Board of Commissioners) shall appoint the Trustees of the Foundation. With the exception of the Hospital Trustee and the CEO Trustee, the criteria for which are set out in Article V of the Articles, the Board of Commissioners may establish the criteria for selecting the remaining Trustees. Provided that members of the Board of Commissioners meet the criteria established, they may serve as Trustees. However, note the limitation that no more than two members of the Board of Commissioners may serve as Trustees.
Your letter also asks us to address whether the District can appoint Trustees. As provided above, the District acting by and through its Board of Commissioners, "shall appoint the Trustees." Article V of the Articles states that one trusteeship is reserved for someone appointed by the Slidell Memorial Hospital Board of Commissioners (the Hospital Trustee) and one trusteeship is reserved for the Chief Executive Officer of Slidell Memorial Hospital (the CEO Trustee). This provision of the Articles also addresses vacancies on the Board of Trustees by stating:
 Any vacancy on the Board of Trustees shall be filled by the Member by election for the unexpired term at the next regular or special meeting of the Slidell Memorial Hospital Board of Commissioners (the "Member.") Vacancy in the office of the Hospital Trustee shall be filled through appointment by the chairman of the Slidell Memorial Hospital Board of Commissioners (the "Member.")
The annual election of Trustees is addressed by Article I, Section 1.4 of the Bylaws, which provides, in pertinent part:
 Nominations of candidates for the position of Trustee to be voted on at an annual meeting may be made by any commissioner of the Board of Commissioners of St. Tammany Parish Hospital Service District No. 2. Any such nomination may be made viva voce at any duly convened meeting of the Board of Commissioners of St. Tammany Parish Hospital Service District No. 2. Alternatively, any such nomination may be made by notice in writing to be delivered or mailed to the secretary of the Board of Commissioners at least ten days prior to the date of the annual meeting of the Member or otherwise established by resolution of the Board of Commissioners.
Article I, Section 1.5 of the Bylaws states that, "All elections shall be by plurality and all questions decided by majority of the votes case except as otherwise provided by law." *Page 8 
As previously mentioned, the Articles provide for the appointment of the CEO Trustee. If there is a vacancy in the Hospital Trustee position, the chairman of the Board of Commissioners is authorized to appoint someone to fill this position. Otherwise, the District, acting through its Board of Commissioners, may elect Foundation Trustees pursuant to the methods described in Article V of the Articles for filling a vacancy or via the annual election of Trustees.
Your next question asks about the District's right to approve amendments to the Foundation Bylaws and Articles of Incorporation. With respect to the Foundation's Bylaws, La.R.S. 12:222(A) states that, "The members or the directors of a corporation may make, amend and repeal the bylaws of the corporation, subject always to the power of the members to change the action of the directors." Further, Article V of the Bylaws, entitled "Amendments," provides that "The Member or the Board of Trustees may amend these Bylaws by a majority vote. The Member shall have the right to change or repeal any Bylaws made or amended by the Board of Trustees."[1] With respect to amending the Foundation's Articles, La.R.S. 12:237(A) provides that "A corporation may amend its articles in compliance with any method stipulated in its articles." Article VIII of the Articles, entitled "Amendments," provides that "The Member shall have the authority to make, amend, restate, or repeal these Articles of Incorporation," and then sets out the process for adopting an amendment to the Articles, requiring the affirmative vote of two-thirds of the Slidell Memorial Hospital Board of Commissioners.
The District, through its Board of Commissioners, has the right to approve amendments to the Foundation's Bylaws and Articles. The Board of Trustees has the power to amend the Bylaws by a majority vote, but any amendments are subject to change or repeal by the Board of Commissioners.
Lastly, you ask our office whether the District may retain the right to revoke actions or expenditures of the Foundation. For the purposes of this question, we assume, due to the broad nature of the question, that any proposed actions or expenditures are within the prescribed scope and nature of actions and expenditures permitted by the Foundation.
La.R.S. 12:222(C) provides:
 Subject to the provisions of this Chapter, the bylaws may include any provision for the regulation and management of the affairs of the corporation, its rights or powers, the rights, powers or duties of its members, directors or officers, or the directors' qualifications, *Page 9 
classification, number or term of office, or fixing their compensation, not inconsistent with law or the articles.
Instructive to the management, rights and powers of the Board of Trustees are the following provisions of the Bylaws:
 Article II, Section 2.1
 The Board of Trustees shall have the complete management of the business of the Foundation and subject to any restrictions imposed by law, the Articles of Incorporation or these Bylaws. The Board of Trustees may exercise all the powers of the Foundation to the fullest extent allowed by law.
 Article VI, Section 6.7, "Acts affecting immovable property."
 All conveyances of real estate owned by this Foundation shall be executed on its behalf in accordance with resolutions of the Board of Trustees and signed by authorized officers.
 Any acquisition, sale, lease, mortgage or other act affecting immovable property belonging to the Foundation shall require the written consent of the member, St. Tammany Parish Hospital Service District No. 2, acting through its Board of Commissioners.
 Article VI, Section 6.8, "Incurring debt."
 Debt may be incurred only upon the affirmative vote of the Board of Trustees.
 No Trustee, officer of employee shall have authority to incur debt on behalf of the Foundation without the express written consent of the Board of Trustees.
The above provisions entrust the Board of Trustees with the power to regulate and manage the affairs of the Foundation, with an exception for any acts affecting immovable property belonging to the Foundation, which requires the consent of the Board of Commissioners. There is nothing in the current version of the Bylaws that would give the District the right to revoke actions or expenditures of the Foundation,
with the exception for acts affecting immovable property belonging to the Foundation. With regard to the above questions, we caution you that in this instance of where the Hospital Service District serves as the sole member of the Foundation, you may wish to consult with the Louisiana State Board of Ethics to resolve any questions concerning the Code of Governmental Ethics. *Page 10 
We hope that this opinion has adequately addressed the legal issues that you have raised. If our office can be of any further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY: __________________________
 Emalie A. Boyce
 Assistant Attorney General
 JDC: EAB
[1] Please note that Article VIII of the Articles also provides, in pertinent part, "The Member or the Board of Trustees shall have the authority to make, amend, and repeal bylaws to govern this corporation provided the bylaws do not conflict with these Articles of Incorporation. The Member shall have the right to change or repeal any Bylaws made or amended by the Board of Trustees."